UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

TONY THOMAS ROCKWELL,

                Petitioner,               Case No. 1:05-cv-205

v.                                         Honorable Robert J. Jonker

CARMEN PALMER,

                Respondent.

_____/

**OPINION**

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

On April 9, 1997, a jury convicted Petitioner, Tony Thomas Rockwell, of breaking and entering with

intent to commit larceny, MICH. COMP. LAWS § 750.10, and resisting and obstructing a police

officer, MICH. COMP. LAWS § 750.749(b).  On May 15, 1997, the trial court sentenced Petitioner as

a fourth habitual offender to prison terms of three to fifteen years for the resisting and obstructing

conviction and ten to twenty years for the breaking and entering conviction.  Petitioner states his

grounds for habeas corpus relief as follows verbatim:[1]

      I.       IT WAS AN UNREASONABLE APPLICATION [OF] FEDERAL LAW
            WHEN THE SUPREME COURT AND THE COURT OF APPEALS
            DETERMINED IT HARMLESS ERROR WHEN JUDGE GRANT
            DENIED DEFENSE THEORY; INVADING THE PROVINCE OF THE
            JURY CONTRARY TO [PETITIONER'S] CONSTITUTIONAL RIGHT
            TO DUE PROCESS.

---

[1]In his Petition for Writ of Habeas Corpus (docket #1), Petitioner sets forth the procedural history of the case.
He states his grounds for relief, and arguments in support, in his Brief in Support of Petitioner's Petition for Writ of
Habeas Corpus (docket #2).

II.     IT WAS AN UNREASONABLE APPLICATION [OF] FEDERAL LAW WHEN PETITIONER WAS PROSECUTED AND CONVICTED FOR RESISTING AND OBSTRUCTING A POLICE OFFICER'S INVESTIGATION WHERE THERE WAS INSUFFICIENT EVIDENCE CONTRARY TO FEDERAL LAW.

III.    IT WAS AN UNREASONABLE APPLICATION [OF] FEDERAL LAW WHEN JUDGE ABUSED HIS DISCRETION BY DENYING PETITIONER THE OPPORTUNITY TO APPEAL AN INTERLOCUTORY ORDER OF A MOTION TO DISQUALIFY JUDGE GRANT WHEN HIS APPEARANCE OF IMPARTIALITY WAS IN QUESTION CONTRARY TO PETITIONER'S CONSTITUTIONAL RIGHT TO DUE PROCESS.

IV.     IT WAS AN UNREASONABLE APPLICATION [OF] FEDERAL LAW WHEN JUDGE GRANT'S BIAS IMPARTIAL PREDETERMINATION OF [PETITIONER] BEING THE PERPETRATOR OF THE CRIME THREE (3) MONTHS BEFORE HIS JURY TRIAL, CAUSING STRUCTURAL ERROR/DEFECTS NOT SUBJECT TO HARMLESS ERROR CONTRARY TO PETITIONER'S CONSTITUTIONAL RIGHT TO DUE PROCESS.

V.      IT WAS AN UNREASONABLE APPLICATION [OF] FEDERAL LAW WHEN DEFENSE COUNSEL PERFORMANCE FELL BELOW AN OBJECTIONABLE STANDARD OF EFFECTIVE ASSISTANCE OF COUNSEL CONTRARY TO [PETITIONER'S] CONSTITUTIONAL RIGHT TO DUE PROCESS.

VI.     IT WAS AN UNREASONABLE APPLICATION OF FEDERAL LAW WHEN APPELLATE COUNSEL PERFORMANCE FELL BELOW AN OBJECTIONABLE STANDARD OF EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL CONTRARY TO [PETITONER'S] CONSTITUTIONAL RIGHT TO DUE PROCESS.

Respondent has filed an answer to the petition (docket #31), stating that the grounds should be denied because they are either procedurally defaulted or lack merit. Upon review, I find that Grounds I, II, IV and VI have no merit, Ground III is non-cognizable, and Ground V is procedurally defaulted. Therefore, the petition must be denied.

## Procedural History

### A.     Trial Court Proceedings

The state prosecution arose from the January 26, 1997 breaking and entering of the outdoor storage area of a convenience store and the theft of empty beverage containers.  Petitioner was tried before a jury on April 9, 1997, in the Circuit Court for Jackson County on charges of breaking and entering, and resisting and obstructing a police officer.

Officer Adam Williams, of the Jackson City Police Department, testified that on January 26, 1997, at approximately 1:00 a.m., he and Sergeant Dave Kennedy responded to a silent alarm at the Northside Takeout Party Store, located at 1601 Cooper Street, Jackson, Michigan (Trial Transcript (Tr.) Vol. 5, 134-35, docket #12.)  When the officers arrived, they observed a red Ford Mustang exiting the parking lot.  (Tr. 5, 133).  There were no other vehicles in the parking lot. (Tr. 5, 134). As the Ford Mustang passed the patrol car, Officer Williams observed two males in the vehicle.  (Tr. 5, 147).  He also observed a large bag hanging out of the vehicle's trunk.  (Tr. 6, 133). Officer Williams activated the overhead lights and the siren and proceeded to follow the Ford Mustang.  (Tr. 5, 135, 179).  After the Ford Mustang had traveled down several streets, both Petitioner, who was a passenger, and Mark Payne, the driver, jumped from the vehicle and began running in different directions.  (Tr. 5, 136).  Officer Williams left the police car and pursued the driver of the Ford Mustang. (Tr. 5, 136).

Sergeant Kennedy testified that while Officer William pursued the driver, he chased Petitioner.  He identified himself as a police officer and ordered Petitioner to stop.  Petitioner continued running.  (Tr. 5, 171).  Sergeant Kennedy again ordered Petitioner to stop, put his hands up, and lie down on the ground.  (Tr. 5, 172 ).  Petitioner complied with the second order.  (Tr. 5,

172).  Sergeant Kennedy estimated that he chased Petitioner for two to three hundred feet.  (Tr. 5, 172).  Sergeant Kennedy smelled the odor of alcohol on Petitioner's breath, although Petitioner did not appear to be stumbling or falling down.  (Tr. 5, 184).  At this point, Officer LaPort arrived on the scene.  He placed Petitioner in handcuffs, arrested him, and transported him to the police station. (Tr. 5, 172, 173).

The Ford Mustang was towed to the police station and searched by Officer Williams. (Tr. 5, 137).  Officer Williams found a pair of bolt cutters, large bags of empty beverage containers, and a pair of gloves.  (Tr. 5, 137).  Officer Williams ran the registration on the Ford Mustang and found that it belonged to Petitioner.  (Tr. 5, 139).

According to Rhonda Jane Woodruff, a cashier at the Northside Takeout Party Store, there was a storage area at the back of the store that contained two bottle cages enclosed with a chain-link fence.  (Tr. 5, 115-16).  Each bottle cage and the fence were separately chained and padlocked. (Tr. 5, 115-16).  Ms. Woodruff was certain that the area was properly secured when she closed the store and left work that evening.  (Tr. 5, 124).  She was contacted shortly after the silent alarm had sounded.  When she arrived at the store, she observed that the chains had been cut, and the bottle cages broken into.  (Tr. 5, 115-17, 121).

Officer Richard Cook is an evidence technician for the Jackson City Police Department.  (Tr. 5, 187).  Officer Cook also responded to the silent alarm, arriving after the suspects had been apprehended.  (Tr. 5, 192).  He found footprints in the snow both inside and outside the storage area, attributable to boots and tennis shoes. (Tr. 5, 189, 190). He estimated that with the amount of snow that was falling that morning, it would have taken ten to fifteen minutes for footprints to be covered.  (Tr. 5, 190 ).  Officer Williams had earlier testified that when Petitioner

- 4 -

was apprehended he was wearing a pair of black boots. (Tr. 5, 140). The boots were removed during the booking process, and Officer Williams turned them over to Officer Cook. (Tr. 5, 141). Officer Cook testified that he photographed the entire crime scene, including the footprints, (Tr. 5, 198), which he had sprayed with red silicone to outline the impressions. (Tr.5, 202). [2]

Officer Williams observed Petitioner during the booking process. When Sergeant Kennedy attempted to fingerprint Petitioner, he refused to stand up or roll his finger correctly. (Tr. 5, 140). Sergeant Kennedy confirmed Officer Williams's observation, testifying that when he attempted to fingerprint Petitioner, Petitioner kept pulling his hand back. (Tr. 5, 175).

Petitioner testified in his own defense. He testified that he spent the day of February 25, 1997, drinking beer, vodka and Kesslers. (Tr. 5, 224). According to Petitioner, he and Mark Payne met at a bar that evening. Later, while both were at Petitioner's home, Payne suddenly grabbed Petitioner's car keys and bolt cutters, and left the house. (Tr. 5, 222). Petitioner put on his coat (Tr.5, 235), and followed Payne outside, where he observed him sitting in the driver's seat of Petitioner's Ford Mustang. Petitioner entered the passenger side of the car because he was not going to let Payne "run off" with his car. (Tr. 5, 222). While Payne drove the vehicle to the Northside Party Store, Petitioner nodded off. (Tr. 5, 222). When they arrived at the store, which was closed for the day, Payne pulled Petitioner out of the vehicle and began putting the empty beverage containers into bags. Petitioner merely wandered around the storage area to see what Payne was doing. (Tr. 5, 222-24). Petitioner acknowledged that it was his boot print inside the bottle cage.

---

[2]Officer Cook's photographs and Petitioner's boots were entered into evidence. The trial court decided *in limine* that Officer Cook could not testify concerning his opinion of whether the boots matched the photographs. It was for the jury to make its own determination on this issue. (Tr. 5, 19).

(Tr. 5, 243).  He understood what Payne was doing and made an unsuccessful attempt to stop him. (Tr. 5, 224).  After Petitioner and Payne left the scene, Petitioner heard sirens and knew that the police were following them.  (Tr. 5, 243).  Petitioner became confused and panicky, which is why he followed Payne's directions to jump out of the vehicle and run.  (Tr. 5, 223 ).  Petitioner ran from the police officer because "a crime had been committed, and I knew it."  (Tr. 5, 245).  Petitioner finally complied with Sergeant Kennedy's command to stop because he did not want to get shot. (Tr. 5, 223).  Petitioner acknowledged that he had been convicted of breaking and entering a motor vehicle in 1987, and breaking and entering a building with the intent to commit a larceny in 1992 (Tr. 5, 245), and that he pleaded guilty to both offenses because, in fact, he was guilty.  (Tr. 5, 247). On the occasion leading to his arrest, he had no intentions of doing anything wrong.  (Tr. 5, 246-47).

### B.    Direct Appeal

Petitioner appealed his conviction as of right to the Michigan Court of Appeals, raising the following six grounds for relief: (1) the trial court erred when if failed to instruct the jury on the defense of voluntary intoxication; (2) there was insufficient evidence to support his conviction of resisting and obstructing a police officer; (3) the trial court erred by allowing a pair of boots to be admitted into evidence because the chain of custody was not established; (4) the sentence imposed by the trial court was disproportionate; (5) the trial court gave erroneous jury instructions; and (6) the trial judge erred by failing to disqualify himself after he had accepted Petitioner's co-defendant's guilty plea.[3]  (Vol. 7, docket #14).  On April 6, 1999, the Michigan Court of Appeals issued an unpublished opinion rejecting all appellate arguments and affirming

---

[3]Grounds 1 through 4 were raised on Petitioner's behalf by appellate counsel.  Petitioner raised ground 5 in his supplemental brief, and ground 6 in a later filed "Standard 11 Brief."

Petitioner's conviction and sentences. (See Apr. 6, 1999 Michigan Court of Appeals opinion (MCOA Op.), docket #14).

In his application for leave to appeal to the Michigan Supreme Court, Petitioner raised the same claims that had been rejected by the Michigan Court of Appeals. The Michigan Supreme Court denied his application for leave to appeal on April 11, 2000, because the Court was not persuaded that the questions should be reviewed.. (See Apr. 11, 2000 Michigan Supreme Court order (Mich. Or.), docket #15). Petitioner's motion for reconsideration was denied by the Michigan Supreme Court on June 26, 2000.

### C.  Post-Conviction Relief

On November 20, 2000, Petitioner filed a habeas corpus petition in the federal court. See Rockwell v. Sherman, No. 2:00-cv-222 (W.D. Mich.). On January 14, 2002, the District Judge dismissed the petition without prejudice under the rule of Rose v. Lundy, 255 U.S. 509 (1982), because it raised both exhausted and unexhausted claims.

On May 30, 2002, Petitioner filed a motion for relief from judgment under MICH. CT. R. 6.500 in the Jackson County Circuit Court, asserting that Judge Grant erred by failing to instruct on the defense of voluntary intoxication. Additionally, he claimed that trial counsel was ineffective for failing to file motions (a) to dismiss the resisting and obstructing charge, (b) to disqualify the trial judge, (c) to suppress Petitioner's prior convictions, and (d) for a mistrial where testimony presented at the preliminary hearing was inconsistent with trial testimony. Finally, he claimed that appellate counsel was ineffective for failing to (a) exhaust federal claims in state court, (b) appeal the decision on the jury instruction of voluntary intoxication, (c) appeal the decision regarding Judge Grant's recusal, and (d) raise the issue that refusing to be fingerprinted is a misdemeanor. The trial court

denied his Rule 6.500 motion on December 30, 2002.  The Michigan Court of Appeals denied his delayed application for leave to appeal on March 5, 2004, for the reason that Petitioner had failed to meet the burden of establishing entitlement to relief under MICH. CT. R. 6.508(D).  *People v. Rockwell*, No. 251166 (Mich. Ct. App. Mar. 4, 2004), Vol. 13, docket #20.  On December 29, 2004, the Michigan Supreme Court also denied the application for leave to appeal because Petitioner had failed to meet the burden of establishing entitlement to relief under MICH. CT. R. 508(D).  *People v. Rockwell,* No. 126000 (Mich. Dec. 29, 2004), Vol. 14, docket #21.

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 791 (2001), *cert. denied, Texas v. Penry*, 126 S. Ct. 2862 (June 12, 2006). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme

Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). "Yet, while the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at

411; *accord Bell*, 535 U.S. at 699.  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable."  *Williams*, 529 U.S. at 410.

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1);  *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

### Discussion

I.   Ground 1:  Failure to instruct on voluntary intoxication

As his first ground for relief, Petitioner contends that the trial judge committed reversible error when he declined to instruct the jury on the voluntary intoxication defense to the specific intent crime of breaking and entering with intent to commit larceny.  Generally, a claim based upon an incorrect jury instruction is not cognizable on habeas review.  A habeas petitioner must show that the failure to give the requested jury instruction "so infused the trial with unfairness as to deny due process of law."  *Estelle v. McGuire*, 502 U.S. 62, 75 (1991).  If a petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law.  *Id.* Because jury instructions are typically matters of state law, the standard for demonstrating that an erroneous jury instruction caused constitutional error in a habeas proceeding "is even greater than

the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). A habeas petitioner's "burden is especially heavy [when] no [affirmatively] erroneous instruction was given. . . . An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* at 155.

The United States Supreme Court has held that a criminal defendant is not constitutionally entitled to a voluntary intoxication defense. *Montana v. Egelhoff*, 518 U.S. 37, 56 (1996) (rejecting due-process claim that the jury should have considered evidence of defendant's voluntary intoxication). In *Hill v. Mitchell*, 400 F.3d 308 (6th Cir. 2005), the Sixth Circuit held that the petitioner was not entitled to habeas relief because of the trial court's failure to instruct on cocaine intoxication. Applying the standard under the AEDPA, the Sixth Circuit noted that the United States Supreme Court has never held that the Constitution requires trial courts to give jury instructions on intoxication as a defense. *Id.* at 322. The Court rejected the petitioner's argument that the absence of an intoxication instruction relieved the prosecution of its burden of establishing the mental element of the crime beyond a reasonable doubt, where there was ample evidence that despite his cocaine intoxication, his "careful, calculated steps" showed that he had the capacity to form the requisite intent. *Id.* at 323.

In the instant case, at the time the crime was committed, voluntary intoxication was a defense in Michigan if it negated "the specific intent of the crime charged if the degree of intoxication is so great as to render the accused incapable of entertaining the intent."[4] *People v. King*, 534 N.W. 2d 534, 536, 210 Mich. App. 425 (1995). The Michigan Court of Appeals found

---

[4]In 2002, Michigan abolished voluntary intoxication as a defense to any crime. *See* MICH. COMP. LAWS § 768.37(1).

that the trial court erred under state law by failing to provide the requested instruction, but concluded that the error was harmless as the evidence at trial did not demonstrate that Petitioner "was so intoxicated as to render him incapable of having the intent to commit the charged offenses."  The Court of Appeals reasoned:

> Officer Kennedy stated that defendant "didn't seem to be stumbling [or] falling down."  Defendant testified that he accompanied the co-defendant because he "was not going to let the [the co-defendant] take [his car] without [him]."  Defendant acknowledged that he had had the presence of mind to put on his coat before going outside.  When asked why he ran from the police, defendant stated, "Because a crime had been committed, and I knew it."

(MCOA Op.).  Additionally, Petitioner understood that the sirens he heard indicated that the police were following the Ford Mustang, was able to run two to three hundred feet, and comprehended the possible results of failing to obey Sergeant Kennedy's order to stop.  The record shows that there was sufficient evidence that Petitioner was not so impaired as to be unable to form the specific intent required for conviction.  The state appellate court's affirmation of the trial court's refusal to give an instruction on voluntary intoxication did not result in a decision that was contrary to, or an unreasonable application of firmly established federal law.

II.      Ground 2:  Insufficient evidence - resisting and obstructing

As his second ground for relief, Petitioner claims that his prosecution and conviction for resisting and obstructing a police officer was based upon insufficient evidence. He argues that at the time he was fleeing from police he was not under arrest. He further argues that his later refusal to be fingerprinted during the booking process, which he characterizes as simply a formality, had no bearing on his actual arrest.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard articulated by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988). *See also In re Winship*, 397 U.S. 358, 364 (1970) (holding that due process is satisfied if the prosecution proves every element of a charged offense beyond a reasonable doubt.).

The Michigan Court of Appeals rejected Petitioner's claim, stating that:

The elements of the crime of resisting arrest are (1) the defendant must have resisted arrest; (2) the arrest must have been lawful; (3) the person making the arrest must have been an officer of the law; (4) the defendant must have intended to resist the officer; (5) the defendant must have known that the person he was resisting was an officer; and (6) the defendant must have known that the officer was making an arrest. *People v. Julkowski*, 124 Mich. App. 379, 383; 335 NW2d 47 (1983).

In the present case, ample evidence was presented to support defendant's conviction of resisting and obstructing a police officer. In running from the police, defendant actively interfered with the police officer's investigation of the alarm at 1601 Cooper. Moreover, defendant knew that was fleeing from the scene of a crime. *Cf. People v. Pohl*, 207 Mich. App. 332, 333; 523 NW2d 634 (1994). Furthermore, the evidence established that defendant refused to be fingerprinted and photographed at the police station. Defendant's noncompliance hindered the officers' execution of their duties. *Cf. People v. Davis*, 209 Mich. App. 580, 586; 531 NW2d 787 (1995).

- 13 -

> Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found defendant guilty of resisting and obstructing a police officer.

(Apr. 6, 1999 MCOA Op.).

Petitioner was charged and convicted under MICH. COMP. LAWS § 750.749, which provides that it is an offense to assault, batter, wound, obstruct or endanger an officer in the enforcement of the law.  Petitioner does not claim that the prosecution failed to prove elements two through six.  He only argues that neither his pre-arrest flight nor his conduct during the booking process satisfied the term "arrest" in the first element.  The cases cited by the Michigan Court of Appeals show that under Michigan law, flight from a lawful directive of a police officer that interferes with a police officer's investigation is sufficient to support a conviction of resisting and obstructing. *People v. Pohl*, 523 N.W.2d 634, 635 (Mich. Ct. App. 1994) (finding that while the defendant fleeing from police after a traffic stop "did not physically obstruct the officer, he did engage in conduct that under all the circumstances hindered an officer conducting a police investigation-a police function covered by the resisting and obstructing statute.").  Thus, Petitioner's argument that his flight and resistance prior to arrest does not satisfy the statute has no merit.

Moreover, Petitioner has cited no cases holding that the booking process is exempt from the statute.  In *People v. Davis*, 531 N.W.2d 787, 790 (Mich. Ct. App. 1995), the court found that when the defendant refused to allow police officers to procure blood samples he violated the statute by hindering the officers' execution of their duties.  Similarly, in *People v. Little*, 456 N.W.2d 237, 434 Mich. 652, (Mich. 1990), the Michigan Supreme Court reinstated resisting and obstructing charges against the defendant after he hindered a police officer's attempt to administer a breathalyzer test.  Accordingly, under Michigan law, charges of resisting and obstructing are appropriate where a person obstructs an officer during any phase of the arrest process.  The Michigan Court of Appeals

determined that the trial court did not err in affirming Petitioner's conviction for obstructing and resisting did not result in a decision that was contrary to, or an unreasonable application of firmly established federal law.

III.    Ground 3:  Post-conviction motion

As his third ground for relief, Petitioner argues that when Judge Grant decided Petitioner's Michigan Court Rule 6.500 motion, he essentially denied Petitioner the opportunity to appeal the decision on his Michigan Court Rule 2.300 motion to disqualify Judge Grant.

When Petitioner filed his Rule 6.500 Motion for Relief from Judgment on May 30, 2002, he also filed a Rule 2.300 Motion to Disqualify Judge Grant from deciding the Rule 6.500 motion.  The circuit court's chief judge denied the motion to disqualify on August 2, 2002.  On October 2, 2002, Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals.  On December 30, 2002, while the application was pending in the Court of Appeals, Judge Grant denied the Rule 6.500 motion.  On July 1, 2003, the Michigan Court of Appeals denied the delayed application for leave to appeal for lack of merit in the grounds presented.  *See People v. Rockwell*, No. 24408, (Mich. Ct. App. July 1, 2003), docket #18.

Section 2254(a) provides that a federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254.  The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986).  A due process claim related to collateral post-conviction proceedings, even if resolved the petitioner's favor, would not "result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention

because [the court] would not be reviewing any matter directly pertaining to his detention."  *Id.* at 247.  Accordingly, the Sixth Circuit has repeatedly held that errors in post-conviction proceedings do not directly challenge the judgment pursuant to which a petitioner is in custody, and therefore, are outside the scope of federal habeas corpus review.  *See Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002); *Alley v. Bell*, 307 F.3d 380, 387 (6th Cir. 2002) ("error committed during state post-conviction proceedings cannot provide a basis for federal habeas relief"); *Greer v. Mitchell*, 265 F.3d 663, 681 (6th Cir. 2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief"); *Kirby*, 794 F.2d at 248 ("the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings").  The claim, therefore, is not cognizable.

IV.   <u>Ground 4:  Recusal</u>

As ground four, Petitioner claims that Judge Grant should have *sua sponte* disqualified himself on the basis of personal bias where the judge had predetermined Petitioner's guilt.  He contends that when Judge Grant accepted the guilty plea of Petitioner's co-defendant, Mark Payne, for aiding and abetting he thereby determined that Petitioner was also guilty.  On this issue, the Michigan Court of Appeals found as follows:

> Finally, defendant argues that the trial judge should have disqualified himself because he had previously accepted the co-defendant's guilty plea. We disagree.  This Court has previously declined to adopt a rule of automatic disqualification on this basis.  *See People v. Rider*, 93 Mich. App. 383, 388; 286 NW2d 881 (1979).  Because the record does not reflect a showing of actual bias or prejudice against the defendant, disqualification was not warranted.

(Apr. 6, 1999 MCOA Op.).

The due process clause clearly requires a fair trial in a fair tribunal, before a

- 16 -

judge with no "actual bias" against the defendant or interest in the outcome of the particular case. *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). A claim of judicial bias against a state court judge is analyzed under the standard announced in *Liteky v. United States*, 510 U.S. 540 (1994), in which the Court held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id.* at 555. Judges' opinions "as a result of what they learned in earlier proceedings" does not establish bias or prejudice against an individual or his case. *Id.* at 551. To show improper bias, a judge's comments must "display a deep-seated favoritism or antagonism that would make a fair judgment impossible." *Id.* The "pejorative connotation of the terms 'bias' and 'prejudice' demands that they be applied only to judicial predispositions that go beyond what is normal and acceptable." *Id.* at 552. Under this standard, "[o]nly in the most extreme of cases would disqualification on the basis of bias and prejudice be constitutionally required." *Williams v. Anderson*, 460 F.3d 789, 814 (6th Cir. 2006).

Prejudice or bias must generally be personal, or extrajudicial, in order to justify recusal. *See Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir. 1988). Personal bias is acquired from some source other than participation in the proceedings. *See Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989). A judge is not required to recuse himself based on the "subjective view of a party," regardless of how strongly that view is held. *Browning*, 837 F.2d at 279. Absent a showing of actual bias, there is no rule that judges must disqualify themselves where they prosecuted the defendant in an earlier proceeding. *See Corbett v. Bordenkircher*, 615 F.2d 722, 723-24 (6th Cir. 1980).

Petitioner's claim fails the standard set forth in *Liteky* as he has not identified any comments or actions by Judge Grant that demonstrate the degree of antagonism necessary for him to succeed in a claim of judicial bias. Nothing in the record shows that Judge Grant treated

Petitioner unfairly.  The decision by the state appellate court that Judge Grant did not err in failing to *sua sponte* recuse himself was not  a decision that was contrary to, or an unreasonable application of firmly established federal law.

V.    Ground 5:  Ineffective assistance of trial counsel

Petitioner claims that his trial counsel was ineffective because he failed to file motions  (a) to dismiss the resisting and obstructing charge, (b) to disqualify Judge Grant, (c) to suppress Petitioner's prior convictions, and (d) for mistrial where Sergeant Kennedy's testimony at the preliminary hearing was inconsistent with his trial testimony.  Petition first raised this issue in his motion for relief from judgment under MICH. CT. R. 6.500.  The Michigan Court of Appeals and the Michigan Supreme Court summarily denied his delayed applications for leave to appeal on March 5, 2004, and December 29, 2004, respectively for the reason that Petitioner had failed to meet the burden of establishing entitlement to relief under MICH. Ct. R. 6.508(D).  *See People v. Rockwell*, No. 251166 (Mich. Ct. App. Mar. 4, 2004), docket #20, and  *People v. Rockwell,*  No. 126000 (Mich. Dec. 29, 2004), docket #21.

A federal habeas petitioner procedurally defaults a claim by "failing to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim." *Seymour v. Walker,* 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v. Sykes,* 433 U.S. 72, 80, 84-87, (1977)).  When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether:

(1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

A state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the time of the asserted procedural default. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). Michigan Court Rule 6.508(D) is a procedural rule which precludes a Michigan court from granting relief from judgment in certain cases. One subsection of Rule 6.508(D) precludes relief where the defendant's asserted grounds for relief, other than jurisdictional defects, could have been raised on appeal or a prior post-conviction motion. MICH. Ct. R. 6.508(D)(3).

The last state court to review Petitioner's ineffective assistance of trial counsel claims was the Michigan Supreme Court. The Court denied Petitioner's application for leave to appeal based upon Rule 6.508(D). The Sixth Circuit has repeatedly held that Rule 6.508(D) is an "independent and adequate" ground barring review of a petitioner's federal claims. *See, e.g., Ivory v. Jackson*, 509 F.3d 284, 293 (6th Cir. 2007); *Munson v. Kapture*, 384 F.3d 310, 315 (6th Cir. 2004); *Burroughs v. Makowski,* 282 F.3d 410, 414 (6th Cir. 2002); *Simpson v. Jones*, 283 F.3d 399, 407-08 (6th Cir. 2000). Accordingly, this claim is procedurally defaulted.

However, if a petitioner procedurally defaults his federal claim in state court, the federal court may review the claim if the petitioner demonstrates either: (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law

alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 126 S. Ct. 2064, 2076 (2006)*; Murray v. Carrier*, 477 U.S. 478, 495 (1986).

Petitioner has not shown any cause for his failure to raise on direct appeal his claim of ineffective assistance of counsel, particularly considering that Petitioner filed two briefs on his own behalf raising other claims that had not been asserted by his appellate counsel. In his brief filed with this court, he offers no explanation for his failure to raise the ineffective assistance claim at the same time. Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Regardless, Petitioner cannot show that he was prejudiced by those particular omissions of trial counsel. Prejudice requires the Petitioner to show "'not merely a . . . *possibility* of prejudice, but that [errors] worked to his actual and substantial disadvantage.'" *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). "'Accordingly, the prejudice component of the cause and prejudice test is not satisfied if there is strong evidence of a petitioner's guilt and a lack of evidence to support his claim.'" *Id.* (quoting *Rust v. Zent,* 17 F.3d 155, 161-62 (6th Cir. 1994). As discussed under Grounds II and IV, motions to dismiss the resisting and obstructing charges, and to disqualify Judge Grant would have been futile as they have no merit. A motion for mistrial would likewise have been futile. Sergeant Kennedy testified at the preliminary examination that Petitioner was too intoxicated to be properly fingerprinted. (Prelim. Exam. transcript, Feb. 5, 1997, Vol. 2, 54, docket #9). At trial he testified that Petitioner refused to be fingerprinted. (Tr. 5, 175 ). The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses

against him." U.S. CONST. , amend. VI.  The right secures an adequate opportunity to cross-examine adverse witnesses.  *United States v. Owen*, 484 U.S. 554, 557 (1988).  During cross-examination, Petitioner's counsel questioned Sergeant Kennedy about his testimony at the preliminary examination. Thus, Petitioner's Sixth Amendment rights were not infringed, and there was no basis for a mistrial.  Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Chegwidden v. Kapture*, 92 F. App'x. 309, 311 (6th Cir. 2004); *A.M. v. Butler*, 360 F.3d 787, 795 (7th Cir. 2004); *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.1990); *United States v. Wright*, 573 F.2d 681, 684 (1st Cir. 1978).

As to trial counsel's decision not to move to suppress Petitioner's prior convictions, it was clearly a strategic choice.  During his closing argument, counsel argued that Petitioner had "been in trouble in the past but in those occasions he's gone in and pled guilty; that this is the first time he's ever stood up for something and said, no, I didn't do that.  I'm not going to say I did that." (Tr. 272-73).  "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001).  A particular strategy need not be one most lawyers would adopt, "but it must be within the range of logical choices an ordinarily competent attorney ... would assess as reasonable to achieve a specific goal." *Cone v. Bell*, 243 F.3d 961, 978 (6th Cir. 2001).  Considering that Petitioner did not deny he was at the scene during the commission of the crime, it was not outside the bounds of reasonable trial strategy for trial counsel to attempt to show that when Petitioner was guilty of wrongdoing, he accepted responsibility.

The miscarriage-of-justice exception only can be met in an "extraordinary" case

where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 126 S. Ct. at 2076-77.  A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  Petitioner correctly is not seeking relief under the actual innocence exception.  In summary, this claim is procedurally defaulted, and it does not meet any exception allowing federal review.

VI.     Ground 6:  Ineffective assistance of appellate counsel

As his final ground for relief, Petitioner claims that he received ineffective assistance of appellate counsel.  He argues that appellate counsel was ineffective because he failed to (a) exhaust federal claims in state court, (b) appeal the decision on the jury instruction of voluntary intoxication, (c) appeal the decision regarding Judge Grant's recusal, and (d) to raise the issue that refusing to be fingerprinted is a misdemeanor.

In *Strickland v. Washington*, 466 U.S. 668, 687-88  (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed

at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.  "When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'"  *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697).  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Strickland*, 466 U.S. at 697.  A claim of ineffective assistance of counsel presents a mixed question of law and fact. Accordingly, the Court must apply the "unreasonable application" prong of § 2254(d)(1).  *See Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003).

With regard to the performance prong of the inquiry, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of performance is highly deferential, and "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  It is difficult to demonstrate that an appellate attorney violated the performance prong where the attorney presented one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 289.   An appellate counsel's failure to raise a claim that lacks merit on direct appeal does not satisfy either prong of the *Strickland* test.  *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).  Moreover, the *Strickland* analysis "does not require an attorney to raise every non-frivolous issue on appeal." *Id.*

The process of "winnowing out weaker arguments on appeal and focusing on 'those more likely to prevail . . . is the hallmark of effective appellate advocacy." *Caver v. Straub*, 349 F.3d 340, 348-49 (6th Cir. 2003) (quoting *Smith v. Murray*, 477 U.S. 527, 536 (1986)).  Therefore, this court must consider  whether, in light of all the circumstances viewed at the time of counsel's conduct, counsel's "acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

As for the prejudice prong of the Strickland test, the Court instructed the "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The prejudice prong "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Therefore, the prejudice inquiry must not focus solely on mere outcome determination; attention must be given to "whether the result of the proceeding was fundamentally unfair or unreliable." *Id.* at 369.  Petitioner has not shown that appellate counsel's performance was objectively unreasonable, or that he was prejudiced by appellate counsel's omissions.

Petitioner claims that counsel should have challenged the prosecutor's decision to charge Petitioner with resisting and obstructing rather than the simple misdemeanor of refusing to be prosecuted.  Prosecutors have wide discretion when determining which cases to prosecute. *United States v. Allen*, 954 F.2d 1160, 1166 (1992).  As long as the prosecutor has probable cause to believe that an accused has committed an offense defined by statute, decisions regarding whether to prosecute and what charges to file generally rest entirely within the prosecutor's discretion. *Id.* (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).  The prosecutor, however, may not base

his or her decision on a defendant's race, gender, religion or the exercise of a statutory or constitutional right. *Id.* The record is devoid of any evidence that the prosecutor in the present case considered any of these impermissible factors when deciding the charges to bring against Petitioner. Appellate counsel's decision not to raise this claim was clearly reasonable. Because Petitioner himself raised the issues of jury instructions and Judge Grant's recusal on direct appeal, and the Michigan Court of Appeals addressed the issues, he suffered no prejudice by appellate counsel's failure to raise the issues.

### Conclusion

For the foregoing reasons, Petitioner's application for habeas corpus relief will be denied.

A Judgment consistent with this Opinion will be entered.

Dated:   March 31, 2008          /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  UNITED STATES DISTRICT JUDGE